## THE YALE & TOWNE MANUFACTURING COMPANY v. THE INTERNATIONAL ASSOCIATION OF MACHINISTS ET AL.

SUPERIOR COURT     FAIRFIELD COUNTY     FILE No. 74390

Memorandum filed July 3, 1947.

*Cressy, Bartram, Melvin* and *Sherwood* of Stamford, for the Plaintiff.

*Buckley* and *Hanna,* of Stamford, for the Defendants.

CORNELL, J. These are two applications filed under the authority of General Statutes, § 5850, which empowers this court to vacate an award made by arbitrators, for certain reasons specifically recited therein. They each allege the existance of a written agreement between the applicant of the one part and the respondents of the other concerning certain matters entering into the basis of compensation and other working conditions between applicant and its employees, members, of respondent labor unions; that included in each of such written

agreements is a covenant to arbitrate any differences that might arise thereunder; that certain controversies and disputes have eventuated; that, accordingly, arbitrations were had under and in the instance of each of such agreements and awards made; and that for reasons alleged in each application the respective awards should be vacated on grounds among those enumerated in § 5850. Citations were issued on each application, each signed by a judge of this court to the respondents named. One of these was dated January 8, 1947, and required defendants to appear on or before January 31, 1947, directing service to be made on or before January 11, 1947; the other was dated January 2, 1947, returnable on or before January 24, 1947, and directed service to be made on defendants on or before January 10, 1947. It is unnecesseary to detail the reasons alleged in the pleas in abatement filed to each application. In general, they state the proposition that the applications are, in effect, civil actions and since they are not commenced by the issuance of a writ and summons but by application with citation signed by a judge, they are defective and are not within the authority conferred by § 5850. Whether the exercise of certain rights conferred on parties to arbitrations by chapter 302, of which §5850 is a part, involves the commencement of a civil action within the meaning of §§ 5504 and 5505, prescribing the form of service on the adverse party in the latter case, is necessarily to be determined by the provisions of that chapter.

Courts have no inherent power over arbitration as such. There are two kinds of arbitration, namely, at common law and under statute. At least, until 1929 this was so in Connecticut. At common law the arbitration is distinctly the private concern of the parties to it in which the courts have no interest. If any party deemed himself wronged by the award made in such case, his recourse was to equity, not to set aside the award as such, but for relief against corruption and partiality attending it, or mistake in the application of their own principles by the arbitrators or for fraud or misbehavior on the part of the parties. *Liggett* v. *Torrington Building Co.*, 114 Conn. 425, 431. In the other (that is statutory) the relief afforded by the courts was, necessarily, that prescribed in the controlling statute. In Connecticut, until 1929, statutory arbitrations were governed by chapter 306, Revision of 1918. A distinguishing charateristic of statutory arbitrament from one at common law was the requirement that the former be initiated under a rule of court, the sanction for which was the filing in court of a written a-

greement of submission signed and sworn to by the parties. Rev. 1918, § 5993. A good example of the procedure in this respect occurs in *Liggett* v. *Torrington Building Co.*, supra. See A-13 Rec. & Briefs, pp. 112-114. The procedure was informal, but the rule of court once entered conferred jurisdiction upon the court to render judgment and grant execution upon the award when returned to and accepted by the court. Rev. 1918, § 5993. It was essentially based upon the voluntary act of submission by the parties; even so, the court was without power to compel the arbitration to proceed if one of the parties to an agreement to arbitrate refused or neglected to unite with another or other parties thereto in submitting a controversy arising under such a contract to arbitrate.

Chapter 65 of Public Acts of 1929, now incorporated in chapter 302, Revision of 1930, markedly changed the law in respect of judicial control of arbitrations as it had been prior thereto in chapter 306 of the Revision of 1918. Prominent in this respect are the provisions of § 5840, contained in that chapter, in which it is declared: "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof, . . . or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, except where there shall exist sufficient cause at law or in equity for the avoidance of written contracts generally." Consonantly with this declaration, means were afforded to a party (§ 5842) to such an undertaking to coerce another who in writing agreed to but refuses to arbitrate to do so, in that he may make application to this court, or a judge thereof in vacation, for an order to compel "the parties to proceed with the arbitration in compliance with their agreement"; and to prevent the failure of such arbitration either through the recalcitrance of a party to the agreement or certain mentioned unforeseen events the court is empowered to appoint an arbitrator or arbitrators or umpire if one of the parties fails to do so in accordance with the method provided by the agreement. § 5843; see, also, § 5846 in this connection. The time within which the award must be rendered is limited in § 5848 and the parties or either of them authorized to make application for its confirmation (§ 5849), or to have it vacated (§ 5850), or modified or corrected (§ 5851).

These references to the statutory law applicable to the instant proceeding indicate that all arbitrations based upon written contracts are now statutory if the parties, or either of them, desire them carried out, without the necessity of first obtaining a rule of court, which latter formality has been done away with by the repeal of § 5993, Rev. 1918, contained in § 18 of chapter 65 of Public Acts of 1929. This is made manifest by express provision of the statutes of the state of New York governing arbitration, after which chapter 302 is modeled. Cahill's Consolidated Laws of New York, 1930, chapter 2, § 4a of article 2 thereof, in part provides: "Where pursuant to a provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract, or a submission described in section two hereof, an award has been, or is hereafter rendered, without previous application to the supreme court or a judge thereof, as required by section three hereof, such award shall notwithstanding anything contained in section three hereof be valid and enforceable according to its terms . . ."

The foregoing discussion is intended to throw light upon the necessity or lack of it for, and the type of process to be issued either at the institution, or at any stage of, arbitration proceedings pursuant to chapter 302, by which the parties are governed in the present case. Only in instances where adverserial action is taken is the issuance of any process by one party to the other therein mentioned. These are in the matters of an application under § 5842 for an order directing the parties to proceed with an arbitration in compliance with their agreement and for an application under § 5843 for the appointment of an arbitrator or umpire, etc., where failure to name them according to the method prescribed in the agreement to arbitrate has occurred, etc. In both cases, service is specified to be by "writ of summons and complaint." As respects an application to vacate an award (§ 5850), however, the statutes are silent concerning the service of process by the moving party upon the other. This is with point since, obviously, when the court directs the parties to proceed to arbitrate under § 5842 or takes cognizance of the proceedings under § 5842 or § 5843, it does so as the result of an application accompanied by process in the prescribed manner. When, under chapter 306 of the Revision of 1918, the submission was followed by a rule of court, the entering of the latter conferred jurisdiction of both cause and parties on the court. The issuance of process preceding the submission would have been a useless and vain performance in view of the invocation

of the court's jurisdiction by all parties to an agreement them-
selves which of necessity preceded the entry of a rule of court.
So, under chapter 302, the voluntary act of arbitrating, the ne-
cessity of a formal submission and rule of court having been
eliminated, or the act of arbitrating by compulsion of an order
of court issued by authority of § 5842 or § 5843 is the com-
mencement of a proceeding to which the other remedial pro-
cesses of chapter 302 attach. In the procedure under § 5840,
quite as effectively as under that of § 5993, of the Revision of
1918, the arbitraton proceeding is commenced and all that fol-
lows thereafter is a part of that proceeding. This is the practice
prescribed in New York from which chapter 302 is borrowed.
There the method of applying for the confirmation or vacation
of an award, as constituting a final step in the statutory plan,
is by motion accompanied by a prescribed and relatively short
notice of the time and place where such motion is to be present-
ed and heard. Nichols-Cahill Ann. N. Y. Civ. Prac. Acts, Vol.
11, §§ 1461, 1462, pp. 350-355.

The fact that the pertinent Connecticut statute uses the word
"application" in this connection while the New York Act em-
ploys the word "motion" is of no materiality. The design of
the two is the same. The important consideration is that, under
both, a motion to confirm or to vacate, as well as one to modify
or correct, an award is not a new action or proceeding but only
a stage in one already pending. This conclusion is buttressed by
the provisions of § 5852, which provides that an application to
confirm, vacate or modify an award of arbitrators "shall be
heard in the manner provided by law for hearing written mo-
tions at a short calendar session, or otherwise as the court or
judge may direct, in order to dispose of the case with the least
possible delay" — provisions that are not consistent with the
conception of a newly commenced civil action. It is true, of
course, that the proceeding is anomalous in certain of its aspects
but its validity for that reason is not questioned at this period
of the proceeding on that account, if, indeed, it is subject to any
successful attack on that score. By express provision of the
New York statute, the comparable proceeding is described as
a "special proceeding" (Cahill's Consol. Laws of New York,
1930, chap. 2, § 6-a), as obviously chapter 302 is also.

It follows from the foregoing that the citations issued in both
of the applications were unnecessary since if any notice ad-
ditional to that afforded by placing these matters on the short

calendar was required, then, in the absence of a statutory specification of same and its content, reasonable notice would suffice. In any case, while notice was not required in that form, the service of the citations afforded such reasonable notice — or, at least, no question is raised on that score.

The plea in abatement filed to each of the applications is overruled; likewise, the respective motions to erase, being based on the same considerations, are denied.